UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22244-Civ-LENARD
    (03-20715-Cr-LENARD)
MAGISTRATE JUDGE P. A. WHITE

BRIAN LENNY MACKEY,                :

          Movant,                  :

v.                                 :          REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA  :

          Respondent.              :
_____

     This matter is before this Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence for felon in possession of a firearm and ammunition
entered pursuant to a guilty plea in Case No. 03-20715-Cr-Lenard.
The Court has reviewed the motion with supporting memorandum, the
government's response, the movant's reply, the Presentence
Investigation Report (PSI), and all pertinent portions of the
underlying criminal file.

     The movant makes the following ten claims:

          1.   The court erred in denying his motion to
               suppress physical evidence. (Cv-DE#1:5).

          2.   The initial discovery of contraband
               resulted from the unlawful detention of
               the movant beyond the permissible scope
               of the traffic stop. (Cv-DE#1:6).

          3.   The court erred when it limited defense
               counsel's cross examination of Detective
               Errol Gardner during the suppression
               proceeding. (Cv-DE#1:8; Cv-DE#4).

          4.   The government committed reversible error
               when it apprised the court that a defense

witness had previously failed a polygraph examination. (Cv-DE#1:9; Cv-DE#2:12).

5.   The seizure of evidence was unlawful as there was no probable cause to stop the movant's vehicle. (Cv-DE#1:10(a); Cv-DE#2:15).

6.   The government committed prosecutorial misconduct when it suborned perjury of Detective Garcia at the suppression hearing. (Cv-DE#1:10(a); Cv-DE#2:29).

7.   The government committed prosecutorial misconduct by leading its witnesses, vouching for their credibility, and making improper comments during the suppression hearing. (Cv-DE#1:10(b); Cv-DE#2:34).

8.   The movant was denied effective assistance of counsel, where his lawyer subjected the movant and a defense witness to a polygraph examination; and also failed to call an eyewitness to offer exculpatory evidence at the suppression hearing. (Cv-DE#1:10(b); Cv-DE#2:41).

9.   His post-arrest statements were obtained in violation of his <u>Miranda</u>[1] rights. (Cv-DE#1:10(c)).

10.  The court erred in ruling that the government did not inappropriately bring up the issue of the failed polygraph examination during a side bar conference. (Cv-DE#1:10(e)).

The procedural history of the underlying criminal case reveals that the movant was charged by Indictment with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1).

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

(Cr-DE#1). Defense counsel filed a pre-trial motion to suppress the physical evidence seized pursuant to an unlawful search and seizure. (Cr-DE#s62-63). Following an evidentiary hearing, the district court entered a lengthy, detailed order denying the movant's motion to suppress. (Cr-DE#72).

Thereafter, the movant entered into a conditional plea agreement, pursuant to Fed.R.Cr.P. 11(a)(2), in which he agreed to plead guilty as charged, but reserved the right to appeal the denial of his motion to suppress solely on the basis of whether the stop of the vehicle and seizure of physical evidence violated the movant's Fourth Amendment rights. (Cr-DE#70). The United States did not consent, however, to the movant reserving the right to appeal any other issues relating to or involving the suppression motion. (Id.). On January 14, 2005, the movant was sentenced to a term of 180 months in prison, followed by four years of supervised release. (Cr-DE#77).

The movant appealed, raising the sole claim that the court erred in failing to suppress physical evidence seized following an unlawful detention which went beyond the permissible scope of the traffic stop.[2] On September 6, 2005, the Court of Appeals per curiam affirmed the denial of the movant's suppression motion in a written, but unpublished opinion. United States v. Mackey, 149 Fed.Appx. 874 (11th Cir. 2005); (Cr-DE#89). This motion to vacate was timely filed on August 30, 2006.[3] (Cv-DE#1).

---

[2]The claim is gleaned from the appellate opinion, United States v. Mackey, 149 Fed.Appx. 874 (11th Cir. 2005), and from the movant's initial brief on appeal which can be found on Westlaw, a legal research database, at United States v. Mackey, 2005 WL 4720411 (11th Cir. 2005).

[3]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

3

In this collateral proceeding, the movant raises multiple claims, many of which could have been, but were not raised on direct appeal. The movant asserts as cause for failing to pursue the claims that he received ineffective assistance of counsel. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001). In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to

4

trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). No such showing has been made in this collateral proceeding.

In claims one, two, and five the movant attempts to relitigate in this collateral proceeding the validity of his stop and ultimate arrest. Specifically, in **claim one**, the movant asserts that the court erred in denying his motion to suppress physical evidence. (Cv-DE#1:5). In support thereof, the movant asserts that there was no credible evidence that the movant's vehicle was stopped because of a broken tail light and a "BOLO"[4]. In **claim two**, the movant asserts that the initial discovery of contraband resulted from the unlawful detention of the movant beyond the permissible scope of the traffic stop. (Cv-DE#1:6). In **claim five**, the movant asserts that the seizure of evidence was unlawful as there was no probable cause to stop the movant's vehicle. (Cv-DE#1:10(a); Cv-DE#2:15).

The arguments in support of these claims were thoroughly litigated during the movant's suppression hearing, which was denied by the trial court. That denial was subsequently affirmed on direct appeal. <u>See</u> <u>United States v. Mackey</u>, 149 Fed.Appx. 874 (11th Cir. 2005); (Cr-DE#89). In affirming the trial court's denial of the suppression motion, the Eleventh Circuit concluded that the officers had probable cause to make the traffic stop based on an equipment infraction, and the weapon was subject to seizure under the plain view doctrine. <u>Id</u>.

Because these claims were raised and rejected on direct appeal, it is procedurally barred from review in this collateral proceeding. Thus, the presentation of these claims in this §2255 proceeding in the guise of ineffective assistance of counsel adds

---

[4] "Be On The Lookout."

nothing of substance which would justify a different result. There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the movant demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.).

In his traverse, the movant concedes that claims one and two were raised and rejected on direct appeal and thus procedurally barred, but argues that claim five differs from that raised on direct appeal. According to the movant, claim five focuses on the officer's alleged initial unlawful actions which formed the basis for stopping the movant's vehicle. The movant maintains that he did not receive a full and fair hearing on his suppression motions and thus no consideration should be given to the trial court's factual and legal conclusions, which were adopted by the appellate court. (Traverse:3-6). The movant's arguments are unavailing. Notwith-

6

standing, claim five will be discussed briefly *infra* as it fails on the merits.

In **claim five**, the movant asserts that the seizure of evidence was unlawful as there was no probable cause to stop the movant's vehicle. (Cv-DE#1:10(a); Cv-DE#2:15). In affirming the denial of the suppression motions, the appellate court concluded correctly that under Florida, the police officer had probable cause to believe a traffic violation occurred, and thus the ensuing stop was legal. United States v. Mackey, supra. at 870.

The law is clear that the Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." United States v. Arvizu, 534 U.S. 266, 273 (2002). For brief investigatory stops, the Fourth Amendment is satisfied if a police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot." Id., citing, Terry v. Ohio, 392 U.S. 1 (1968). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. Arvizu, supra at 273. A decision to stop a vehicle is reasonable under the Fourth Amendment where an officer has probable cause to believe a traffic violation occurred. United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).

"An officer's investigation of a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003)(quotation and citation omitted). The stop must be of limited duration and may not last "any longer

than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cr. 2001). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." <u>Id</u>. However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." <u>United States v. Harris</u>, 928 F.2d 1113, 1117 (11th Cir. 1991). Additionally, police are "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." <u>Simmons</u>, 172 F.3d at 778; <u>see also</u> <u>Purcell</u>, 236 F.3d at 1278 ("The request for criminal histories as part of a routine computer check is justified for officer safety. It is both reasonable and minimally intrusive.").

In this case, the evidence at the suppression hearing reveals as follows. Detective Jose Garcia with the Miami-Dade Police Department, assigned to the Carol City Crime Suppression Team, testified that on April 24, 2003, he was in an unmarked police vehicle when he observed an older model Buick near 191st Street and N.W. 37th Avenue. (Cr-DE#82:6-9). The vehicle caught Garcia's attention because it matched a BOLO and its left rear brake light was not functioning. (<u>Id</u>.:7-8,18). At that time, Detective Garcia decided to conduct a routine traffic stop on the vehicle, by activating his blue lights and siren, and using his police radio to advise other unit members that he was about to conduct a stop. (<u>Id.</u>:8-9,18, 40). Detective Orexy de la Vega responded, driving beside Detective Garcia and behind the Buick. (<u>Id</u>.:10-11,36).

When the Buick stopped, Detective Garcia approached the

8

driver's side of the vehicle, shining his flashlight into the vehicle.[5] (Id.:10,14-16). At that time, he observed the movant place what appeared to be a chrome item between his seat and another seat. (Id.:14-15). Within seconds of this observation, Detective de la Vega shouted "55," the police signal for a firearm or weapon. (Id.:16). The movant was then ordered out of the vehicle, at which time he was handcuffed, patted down, and advised of his constitutional rights. (Id.:16-17). During the pat down search, Detective Garcia recovered from inside the movant's pocket a brown paper bag containing .25 caliber rounds of ammunition. (Id.:18).

The movant then stated that the passenger was his nephew and indicated that his nephew "had nothing to do with the firearm." (Id.:17). He further stated that he was carrying the firearm because he had been involved in a "family feud" with his brother, who threatened to kill him. (Id.).

Detective de la Vega testified consistent with Detective Garcia. (Id.:46-49). According to Detective de la Vega, he also observed the movant place a chrome object between two seats, at which time he advised Detective Garcia that it was a "55." (Id.:53). After the movant and the passenger were removed from the vehicle, Detective de la Vega seized the firearm from the car. (Id.:53-54). He also removed one .25 caliber round of ammunition from the chamber of the firearm. (Id.:53-54).

The movant's nephew, Teth Milligan, testified as a defense witness that on the day of the stop, the officers advised them that they had stopped the vehicle because the vehicle tag did not match

---

[5]Detective Garcia also observed a passenger in the vehicle. (R4:16).

the car. (<u>Id</u>.:66-67). During cross-examination, however, Milligan conceded that he had no knowledge regarding whether the brake light was operable. (<u>Id</u>.:78). He further conceded that prior to the police stop, the movant showed him the firearm. (<u>Id</u>.:87). In rebuttal, Detective Errol Gardner testified that he had spoken with Milligan on the phone in August, 2004, at which time Milligan indicated that during the stop, the officers had made reference to a tail light. (Cr-DE#83:115-116).

After hearing the testimony and observing the witnesses' demeanor, the court denied the movant's motion finding Detective Jose Garcia's testimony credible that he observed and stopped the movant's vehicle on account of a non-functioning taillight. (Cr-DE#72:4). The testimony was consistent with Garcia's deposition, the "A Form," and the incident report. (<u>Id</u>.). While the "TAR Reports" indicate that the vehicle was called in, Garcia testified that he could not recall whether he had called in the tag, not that he did not call it in. (<u>Id</u>.). Moreover, the court found the testimony of Detective Orexy de la Vega's testimony consistent with Garcia's. (<u>Id</u>. at 5). Likewise, the court found credible the detectives' testimonies that they observed the movant place a chrome object, which they believed to be a weapon, between the front seats of the vehicle. (<u>Id</u>.).

Even if counsel had better articulated that there was no probable cause to support the stop, there is no record support for the proposition that the suppression motion would have been granted. Consequently, the movant has failed to demonstrate deficient performance or prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) stemming from counsel's failure to argue the motion to suppress as set forth by the movant in this collateral proceeding.

In **claim three**, the movant asserts that the court erred when it limited defense counsel's cross examination of Detective Errol Gardner during the suppression proceeding. (Cv-DE#1:8; Cv-DE#4). According to the movant, the court unlawfully sustained multiple government objections to defense counsel's cross-examination of Detective Gardner. (<u>Id</u>.).

Review of the record reveals that defense counsel attempted to question Detective Gardner regarding how the Metro-Dade Police Department conducts investigations of police officers. (Cr-DE#83:116). The government's objection on the basis that it was beyond the scope of direct examination was sustained by the trial court. (<u>Id</u>.).

Defense counsel then extensively cross-examined Gardener regarding the eight month delay from the time the movant was arrested until police finally questioned the passenger, Teth Milligan. (Cr-DE#83:118-119). Again, the government's objection that the line of questioning was beyond the scope of direct and argumentative was sustained by the trial court. (<u>Id</u>. at 19).

Defense counsel next attempted to attack the witness' credibility by inquiring as to police procedures regarding the interview of witnesses. (<u>Id</u>. at 121). Despite objections from the government, the court permitted defense counsel to cross examine Gardner regarding additional facts which were beyond the scope of the witness' direct examination. (Cr-DE#83:119,122-24,126). Defense counsel attempted to discredit Gardner, as well as, Detective Garcia and Detective de la Vega by suggesting that Gardner only attempted to contact Milligan after he learned that the officers involved in the case may have committed perjury in a

11

federal case. (Id. at 129). The court sustained the government's objection, and limited counsel's cross-examination to impeachment of Gardner and not the other officers involved.

On the record before this court, no showing has been made that the court erred in its rulings or that the outcome of the proceedings would have been different had counsel raised the validity of the judge's rulings on appeal. Under these circumstances, the movant has failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this issue, and is thus entitled to no relief on this claim.

In **claim four**, the movant asserts that the government committed reversible error when it apprised the court that a defense witness had previously failed a polygraph examination. (Cv-DE#1:9; Cv-DE#2:12). In **claim ten**, the movant asserts that the court erred in ruling that the government did not inappropriately bring up the issue of the failed polygraph examination during a side bar conference. (Cv-DE#1:10(e)).

The record reveals that during a side-bar conference the government advised the court that Milligan wrote a three-page affidavit regarding the events surrounding the movant's arrest. (Cr-DE#82:71). After Milligan prepared the affidavit, Paul Gillan, a polygraph examiner with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") conducted Milligan's polygraph examination and ended the session by inquiring whether Milligan had been truthful in his affidavit. (Id.). The examiner concluded that Milligan was not being truthful. (Id.). At the conclusion of the examination, Milligan voluntarily agreed to return the following day to further clarify the matter with the agent regarding the veracity of Milligan's affidavit and the events that occurred on the day of the

movant's arrest. (<u>Id</u>.). However, it appears from the record that Milligan never returned for the follow-up interview. (<u>Id</u>.).

During the government's cross examination of Milligan, it attempted to establish the fact that Milligan had failed his polygraph examination. When counsel objected to the issue being raised before the court, the court found in pertinent part:

> ...I don't want to go into the polygraph. I
> will allow you [government] to go into the
> fact that he changed his statement as to the
> knowledge of the gun, that he had seen the gun
> and his uncle had the gun and I will allow you
> to go into the fact that he didn't return to
> have more discussions or further questioning
> as he said he would.

(Cr-DE#82:74-75).

Later on in the proceedings, when the issue was again before the court, the court held in pertinent part, as follows:

> My ruling still stands. I do not find that the
> government inappropriately brought it up side
> bar based upon the testimony that I actually
> allowed to come in, which was that he was
> asked to come back because of inconsistencies,
> or his admitting he hadn't been truthful after
> the polygraph and he did not come back the
> next day. My ruling still stands and I find it
> is the appropriate ruling under the
> circumstances because the government was put
> in a position where he didn't return,
> therefore, there may or may not have been
> inconsistent testimony.

(Cr-DE#83:113).

In this case, no showing has been made that the court's ruling

deprived the movant of a full and fair evidentiary hearing on his suppression motions. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to pursue these nonconstitutional issues on appeal. See Strickland v. Washington, supra.

In **claim six**, the movant asserts that the government committed prosecutorial misconduct when it suborned perjury of Detective Garcia at the suppression hearing. (Cv-DE#1:10(a); Cv-DE#2:29). According to the movant, Detective Garcia lied when he testified that the movant's vehicle matched that of a BOLO for a vehicle that was used in several robberies. (Cv-DE#2:29-34). This claim could have been, but was not raised on appeal. As cause for the procedural default, the movant maintains that appellate counsel was ineffective for failing to pursue the issue.

It should first be noted that the trial court found Detective Garcia's testimony credible, and the appellate court noted that there was no evidence that Garcia's testimony was unbelievable. United States v. Mackey, supra at 880. Under these circumstances, the relitigation of this claim in the guise of an ineffective assistance of counsel claim adds nothing of substance to justify a different result.

Moreover, there is no evidence of record to suggest that the government suborned perjury. Even if the testimony of Detective Garcia were deemed to be false, and knowingly introduced by the government, it is not material because there is no likelihood that the testimony could have affected the court's decision regarding the denial of the motion to suppress given Detective de la Vega's testimony which corroborated Detective Garcia's testimony regarding the events surrounding the movant's arrest.

14

The Eleventh Circuit in affirming the denial of the suppression motion noted correctly as follows:

> Moreover, we could also assume that the reason Garcia stopped Mackey [movant] is that he called in the wrong tag and mistakenly believed that Mackey's vehicle reflected the tag of a trailer. There was testimony from De La Vega that mistakes calling in tags are common and, in this case, Garcia would have been off by one letter, having called in T02DET instead of T02QET. When he called in the tag and it was reported that T02DET belonged to a trailer, not Mackey's Buick, Garcia had probable cause to conduct a traffic stop and investigate. The unrefuted testimony from the point Mackey was stopped was that Garcia and De La Vega, with or without guns drawn, approached the back of the car with their flashlights on and saw what they believed to be a chrome weapon being concealed between the driver's seat and the passenger's seat. It was not until Mackey was outside the vehicle that the officers had any notice that they had called in the wrong tag. By that point, even if the original reason for the stop had been rendered moot because the tag was correct, they had reasonable suspicion of other possible illegal activity because of the weapon and were justified to investigate further.

United States v. Mackey, supra at 880.

The law is clear that where a prosecutor knowingly uses perjured testimony, or failed to correct what he subsequently learned was false testimony, the falsehood is deemed to be material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (emphasis added); accord, Giglio v. United States, 405 U.S. 150, 154 (1972); Napue v. Illinois, 360 U.S. 264, 271 (1959). In this case, however, no showing has been made that Detective Garcia committed perjury. Consequently, the

movant cannot demonstrate prejudice stemming from counsel's alleged deficient performance in failing to pursue this claim.

In **claim seven**, the movant asserts that the government committed prosecutorial misconduct by leading its witnesses, vouching for their credibility, and making improper comments during the suppression hearing. (Cv-DE#1:10(b); Cv-DE#2:34). In support thereof, the movant first appears to argue that the government improperly asked leading questions and vouched for the credibility of its witnesses, Detective Garcia and Detective de la Vega.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964 (1988).

The Eleventh Circuit has held in the context of federal criminal prosecutions that prosecutorial conduct requires a new trial only if the remarks 1) were improper and 2) prejudiced the defendant's substantive rights. United States v. Cannon, 41 F.3d 1462, 1466 (11 Cir. 1995); United States v. Cole, 755 F.2d 748, 767 (11 Cir. 1985). The remarks must be reviewed in context and the probable impact upon the jury must be assessed. United States v.

Cannon, supra at 1469; United States v. Stefan, 784 F.2d 1093, 1100 (11 Cir. 1986).

In this case, there is nothing to suggest that the prosecutor's comments or alleged leading questions denied the movant due process at the suppression hearing. First, when viewed in context, the government's statements summarized the facts adduced at the hearing. Moreover, there was sufficient evidence implicating the movant in the offense of conviction. It is clear that the prosecutorial comments did not have a substantial and injurious effect or influence in determining the validity of the suppression motion. Brecht v. Abrahamson, 507 U.S. 619 (1993). Thus, it is evident that the fundamental fairness of the suppression hearing was not affected. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984); Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983); Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964 (1988). Counsel was not ineffective for failing to pursue this nonmeritorious claim. Under these circumstances, the movant is entitled to no relief on this claim.

Even assuming that counsel should have objected to the prosecutor's closing argument, and assuming further that the objections would have been sustained, there is no reasonable probability that the judge would have granted the movant's suppression motion. Under these circumstances, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance in failing to pursue this claim, and is thus entitled to no relief on the claim.

In **claim eight**, the movant asserts that the movant was denied

effective assistance of counsel, where his lawyer subjected the movant and a defense witness to a polygraph examination. (Cv-DE#1:10(b); Cv-DE#2:41). In support thereof, the movant maintains that counsel should not have called Milligan as a defense witness after it realized that the government was aware that Milligan had failed the polygraph examination. (Id.).  The movant claims there was no strategic benefit to having him and Milligan undergo polygraph examinations, even if the results therefrom could have contained favorable information, as they were inadmissible at the suppression hearing. (Id.).

The movant cannot satisfy the prejudice prong of Strickland arising from the fact that defense counsel permitted the movant and Milligan to undergo polygraph examinations. The movant chose not to testify on his own behalf at the suppression hearing and it thus appears on the record that the results of his examination were not used to impeach or otherwise cross-examine him.

Regarding Milligan's polygraph results, the movant also cannot prevail on this claim as the court specifically indicated on the record that it would not consider Milligan's polygraph results in determining whether to grant or deny the suppression motion. Moreover, the defense called Milligan to cast doubt on the lawfulness of the police stop. Counsel's strategic decision to call Milligan as a defense witness should not be second-guessed in this collateral proceeding. Tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance of counsel.  United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978).  Even if a strategic decision appears incorrect in retrospect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v.

Wainwright, 709 F.2d 1443, 1445 (11 Cir.), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also, Nero v. Blackburn, 597 F.2d 991 (5 Cir. 1979)(A defendant may prevail on an ineffective assistance claim relating to trial strategy if he can show that counsel's conduct is so egregious as to raise an inference that it could not reasonably be part of any legitimate strategy.). No such showing had been made here.

The movant also asserts that he was denied effective assistance of counsel, where his lawyer failed to call an alleged eyewitness to offer exculpatory evidence at the suppression hearing. (Cv-DE#2:41). According to the movant, a friend of Milligan assisted Milligan in removing the movant's vehicle from the roadway after the movant was arrested. (Cv-DE#2:43). The movant claims this unidentified witness was in the area at the time the movant's vehicle was stopped, observed the entire incident, and then assisted Milligan in removing the vehicle from the highway. (Id.). The movant maintains that this witness could have corroborated the fact that the tail lights on the movant's vehicle were working at the time the vehicle was removed. (Cv-DE#2:44). The movant concedes, however, that he is unable to recall the witness' name.

In this collateral proceeding, the movant provides no affidavit or other reliable evidence to support his claim that this unidentified individual would have testified as proffered. Under these circumstances, the movant cannot prevail on this claim because there has been no showing that this witness would have testified as proffered. The movant has also failed to establish that even if the movant testified as proffered, the outcome of the

19

suppression proceedings would have been altered in that the court would have suppressed all the evidence. Under these circumstances, no prejudice has been established pursuant to Strickland and the movant is thus entitled to no relief on the claim.

In **claim nine**, the movant asserts that his post-arrest statements were obtained in violation of his Miranda rights. (Cv-DE#1:10(c)). The movant argues for the first time that, at the time he was taken into custody, he was not advised of and did not waive his rights. (Id.).

Review of the suppression hearing transcripts reveals that Detective de la Vega advised movant of his Miranda rights. (Cr-DE#82:17). After being advised of his rights, the movant stated that Milligan was his nephew, and had nothing to do with the firearm seized from the vehicle. (Id.). According to Detective de la Vega, the movant also stated that he had the firearm because he was in a feud with his brother who had threatened kill him. (Id.).

In this case, the movant fails to proffer any objective evidence to support his self-serving allegation that he was not advised of nor did he waive his Miranda warnings. The movant was present at the suppression hearing. He was aware of the detective's testimony, and remained silent. He now attempts to fault counsel for failing to raise this argument at the suppression proceeding. Even if counsel had pursued the issue, there is nothing of record to suggest that the outcome of the suppression proceeding would have been different. In fact, the district court credited the detective testimony when it recommended denial of the motion. Thus, on the record before this court, there has been no showing of prejudice stemming from counsel's failure to pursue this issue. The movant is therefore entitled to no relief on this basis.

20

See Strickland v. Washington, supra.

Finally, the movant's request for an evidentiary hearing should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

It is therefore recommended that this motion to vacate sentence be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 7th day of March, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Brian Lenny Mackey, Pro Se
     Reg. No. 63413-004
     F.C.I. - Coleman (Low)
     P.O. Box 1031
     Coleman, FL 33521-1031

     Karlyn J. Hunter, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Sixth Floor
     Miami, FL 33132